Appeal 25-1013. This is N. T. and P. T. v. Galesburg Community Unit School District, and we're going to begin with oral argument from the appellant. Ms. Satterley, you may approach. Thank you very much. Good morning, and may it please the Court. My name is Frazier Satterley, and my firm represents the appellant, the Board of Education of Galesburg CUSD No. 205. Your Honors, the issue before you today is relatively simple but of great importance to educators throughout this circuit. When it comes to disruptive behaviors in the classroom, where is the least restrictive environment, or LRE, line drawn when those behaviors impede both the student's and his classmate's ability to access their education? What's the status of the placement right now? He's currently in a stay-put placement under IDEA, which means the student is remaining at Silas Willard. So that's where he is right now. There's been no movement. This has been, what, two years almost, this administrative proceeding? That's correct. So stay-put was triggered upon the parents filing a due process. That hearing occurred over March and April. So the student was in first grade? That's correct. And now the student's in third grade? Correct. And it's still the district's desire to move the student to a different school? That's correct, Your Honor. That has not changed. What's the standard of review that we should apply in considering the district court's work here? Well, I think there are two, Your Honor. The first, we've raised three separate bases for appeal. One, that the trial court engaged in an improper trial de novo. And the other, that it misapplied this court's holding of Beth Bee, and that of its progeny, and that it ignored the prohibition enunciated by our Supreme Court in Rowley and Andrew F. That trial courts are not supposed to substitute their notions of sound educational policy for those of the school authorities, which they review, and have the day-to-day access to the children. So in terms of the standard of review, it is de novo on a mixed question of law and fact with respect to the application of Beth Bee, and the question of whether or not he could receive a free and appropriate public education in the least restrictive environment. The standard of review for considering whether the trial court inappropriately considered or failed to consider the administrative record and conducted a trial de novo is clear error. Okay, but I want to push you on that a little bit, because I'm not sure that that's right. When we're considering whether or not the district court gave due weight to the administrative hearing officer, why is the standard of review not de novo? Why is that not a question of law? Or at least a mixed question of fact and law. Other circuits have found that very clearly, that we don't, you know, we as judges are, how should I say this? We are not educators. We are not in a position to determine what is in the best interest of children. We're just not. That's not what we're trained to do. When I read the administrative law, or the independent hearing officer's argument or position in this case, she thoroughly discusses the one-to-one ratio.  Then the district court, in a very short opinion, says that she didn't do it properly. That's correct. Rejects it and finds that they should try a one-to-one ratio. I don't know what she didn't do properly, and the district judge doesn't tell us. I agree that it's unclear on record, your honor. Why should we review that for clear error instead of de novo? In other words, why should we not look at whether or not the district judge afforded due weight to the independent hearing officer under the de novo standard of review? Well, I will say if your honor is inclined to apply the de novo standard of review, the school district is certainly willing to accept that review of the law. But in terms of the deference, I think the issue here, we're talking about that sliding scale of due deference. And the case law from this circuit is very clear that obviously the trial court had the ability and the discretion to take additional evidence. And the state really didn't oppose that, by the way. I'm sorry? The state really didn't oppose that, which is fine. I mean, the state objected to one witness. Fine, but other than that- Because I think both parties had an interest in this case, in supplementing the record. So does the district judge. I don't see the trial de novo as a problem. Correct. I think the issue here is with that due deference scale, while he could provide less deference to the hearing officer as he took on more evidence, none of the case law enunciated by this circuit indicates that that level of deference should be zero. And if we find that the district judge did not afford due deference to the independent hearing officer's determinations, what do we do? Do we remand for the district court to take another look at the independent hearing officer's determination? Consider additional evidence at this point? The problem with these circumstances is a child is developing every day. Correct. Things change every day. But your first and third grade, that's a big difference. For you and I, two years is hopefully not that big of a difference. But for a first grader, it's a big deal. It is. So I want to make sure I'm properly addressing this. If we find that the district court did not afford due deference to the independent hearing officer's determination, what do we do? I believe this court can. It's certainly within your purview to reverse the district court and reinstate the findings, the final determination of findings of the hearing. Aren't we weighing evidence? We didn't see the witnesses testify. We can't judge their credibility, determine their demeanors. No, your honor, I don't believe you're weighing evidence. I believe you're reviewing the district court's lack of deference to the hearing officer. We're reviewing that as a matter of law. Yes. We find that the district court did not appropriately defer to the independent hearing officer. Don't we have to give the district court the opportunity to re-evaluate the independent hearing officer's determination in light of the evidence that the district court has already taken? And maybe we'll take more. I don't believe it would be appropriate for the district court to take more evidence at this point. And I don't think that it's absolutely necessary that this court remands. I think some additional evidence was adduced for the very limited time period from August of 2024 to October of 2024. And the issue is whether or not, instead of supplementing the record, the judge supplanted the administrative record with that information. And I think this court is able to review that and without remanding it back to the district court. Let me ask you this. Why wouldn't the reasons that the parties did not object to the district court taking additional evidence in 2023, 2024? Yes. Why would they not apply even now with the passage of time? So there's about six months that pass. Sure. Right? Sure. Between the administrative findings and the district court's trial. Correct.  Now, as we've been discussing with Judge Kirsch, two more years have passed.  Why wouldn't the same reasons leading to taking additional evidence in that six months period not apply to this two-year period? Are you asking if you remand why it wouldn't be appropriate for the court to consider even more evidence? Yeah, because you were very clear that you did not think that would be appropriate. Well, I mean, I think from a practical perspective, Your Honor, that would lead to these cases never ending. I think that there has to be an end point, right? And if we do it that way, I think we're running into a particularly slippery slope of, well, the child is not static to Judge Kirsch's point, but there has to come a time when the hearing officers' findings and facts of conclusions of law at that specific time are given that deference. So I suppose if you did remand it back with directions for the district court to hear more evidence, at some point, and I want to be clear, this child remains in his stay placement pursuant to that order, and there are still issues, and they have to be addressed, and what is the school district to do? So I think the issue there is how much time is going to be afforded and how much additional evidence actually has to be made before a decision is made with respect to this child's education. Would you like to reserve the remainder of your time for a bubble? Yes, one minute, Your Honor. Very good. Thank you, Ms. Sadler. Thank you. Mr. Wysong, we'll move to you for argument on behalf of the Appley. May it please the court, Charlie Wysong for the Appley CT and his parents, NT and PT, a social worker and a former board member who are here from Galesburg this morning. This case is about whether the school district violated the mainstreaming requirement of the IDA when it chose to send a seven-year-old with ADHD an hour away to Peoria, to a fully segregated school, after just three weeks. And this record has no dispute over evidentiary rulings. There's no dispute of the controlling settled law that has been the law of this circuit since Ross 20 years ago and Alex R 20 years ago as to the standards. There's no dispute over the scope of the record. The judge found following a trial, hearing witnesses in court, that the statute has been violated and that's when it should be upheld unless it was clear error. And it was not clear error where the judge heard that CT is in a small, specialized program where children just like him. Can I ask you a question regarding the independent hearing officer's conclusion? I'm looking at the district court's opinion on your appendix A13. And the district court says, as the parents correctly point out, both the district and the administrative hearing officer did not properly consider whether additional reasonable measures would have made CT's education at Silas, Willard Elements, classroom, et cetera. Where in the district court's opinion should I look for the district court's explanation to us as to why the administrating hearing officer did not properly consider whether additional reasonable measures? Because this just seems to me like a conclusion of the district court saying, I disagree with the independent hearing officer and that's it. The court actually explains and discusses the issue of the one-on-one aid and the testimony before it and the parties throughout. But where specifically does the district court say, here is how the independent hearing officer did not properly consider the one-to-one? I mean, the hearing officer goes on for pages on the one-to-one ratio. The district court does it in a paragraph. The district court does not do it in a paragraph, Your Honor. If you look through the recitation of the evidence and the testimony, and in particular, the district court was explicit, and the record is undisputed that there was new evidence here of changed circumstances. The judge below found extensive change. Very specifically as to the one-to-one ratio. I'm looking at pages A13 and A14. Where else should I look in the district court's 13 or 14 page order here? Yes, Your Honor. The judge reviews the evidence throughout, through A5, through A6, through A7, of all the evidence before it, not only of the need for the one-to-one, but of the changed circumstances. The new medication, the changes in staff, the new evidence that the administrative hearing officer did not add. What does that have to do with the one-to-one ratio? The hearing officer is saying, look, the testimony in the case does not support that a one-to-one ratio would further the interests of the child here for the following reasons, and then explains exactly why she rejects the one-to-one ratio. The district court engages with none of those findings. None. The district court explains its reasoning as to the one-on-one aid. Where? At length, talking about how... There specifically talks about Dr. Drew Leathers and T.E., Tasha Eastley, the review of the testimony that the hearing officer, that the district court heard, and the judge was correct that the hearing officer was mistaken. The hearing officer said that it was not possible to do anything more at Silas Willard Elementary, and that is undisputedly an erroneous factual conclusion, because the district witnesses have repeatedly admitted that they could have provided a one-on-one aid, and that they provide the one-on-one aid for other students, and they did not do so in this case. The hearing officer was also wrong to say that the district had discretion under Latchman to choose among appropriate placements. That is a legal error directly contrary to the... I'm going to push on this. On page 834 of the appendix, the hearing officer describes exactly why a one-to-one aid. She writes, the testimony presented at hearing was overwhelming and uncontroversial on this point. This is the one-to-one aid. And then she goes at length to explain why a one-to-one aid would not help the child here. Where does the... I only see on page, the district court saying, the hearing officer did not properly consider whether additional reasonable measures would have made C.T.'s education satisfactory. But what about her analysis was improper? Her analysis was not proper. And the district judge disagreed with it. Because on a preponderance of the evidence, and the judge's independent decision, which Congress has said is the standard to be applied here, that goes back to Rowley from the United States Supreme Court. The judge explains, if you go back to page 12 and into page 13, the specific reasons why the one-to-one aid would help C.T. The reasoning about the description from the PhD occupational therapist, Drew Leathers, who observed the child the week before the hearing, and the basic things that were not being done, the lack of attention to C.T. without the one-on-one at the time of the hearing in front of the trial court. This job of the judge under the statutory standard is to take additional evidence as Rowley has said, and as this court has said in Ross, to make a quote, independent decision whether the statute was violated. The judge did so, and as long as that conclusion was not clear error, it should be affirmed by this court. Again, these are not novel standards. The school district explains the standard the same way. The judge explains the standard the same way. We explain the standard the same way. It's not a question of the standard. It's a question of the judge's engagement with the facts to proffer appropriate rationale for our review. So clear error doesn't mean get out of jail free. It means we've got to be able to see enough reasoning in the record. That's the tenet of the question. Understood. And if you read the judge's opinion as a whole, whether it said line by line, the hearing officer here and there, the judge explains his reasoning. And if the judge's reasoning is reasonable, it is to be upheld. That's what this court said in Ross. It said that on an IDA case, the appellate court cannot independently determine what is appropriate for the child. It is only reviewing for clear error. And these are fact issues. This is why we have a trial. This is why we have the parents expert was there. The school officials were there. The judge heard from these witnesses live up to the date with new information that the hearing officer did not have. And the judge is clear in this opinion that he's relying on the new information. That is abundantly clear. He goes on at length about the changes in medication and the stability that was needed based on his provider and the testimony from the people who were observing CT as of the fall 2024. And that is the explanation of why he came to a different conclusion than the hearing officer. It's explained at length factually. And that is a factual conclusion entitled to clear error reviewed by this court. And the conclusion was reasonable. It was reasonable where there was no dispute that CT did not have the one-on-one aid and that there was testimony that it would help. Right, this is what trial judges do is make a credibility determination between witnesses who say the one-on-one aid would help and witnesses who do not. And it was not clear error to soak a clue on this record. Among the other testimony was that CT had changes in medication between the administrative hearing officer's decision and the trial court's decision. The court heard testimony about the stability and progress on behavior. The court heard that CT is already learning. He was learning math. He was learning reading. He was hitting his behavior benchmarks. That was all information that the hearing officer did not have available. And at this point at the hearing, the judge below did have that information available and came to the reasonable and correct conclusion that the statute had been violated. This is not a judge with hubris, Your Honor. If you look at the remedy here, it's very specific. There was a dispute over placement. And the judge says the IDA requires CT to stay at Silas. There's a dispute over the one-on-one aid and the judge resolved that dispute. Does CT require the one-on-one aid only because of behavioral issues or for other reasons as well? The one-on-one aid is to implement primarily the behavioral and self-regulation strategies to allow CT to learn. So the one-on-one aid would be providing, facilitating the learning process, right? When he's getting frustrated and taking breaks. CT has a lot of academic talent, both in math and reading as everyone acknowledges. And so primarily he's in special education for behavioral and self-regulation. And the one-on-one aid would be fulfilling the strategies that the school has identified for that purpose. I would also like to comment on the posture following this proceeding. Certainly the court has discretion to remand if it thinks appropriate. I do want to emphasize that by statute, this school team will be reevaluating CT at least once a year, no matter what. And so balanced with the interest in making a sound decision on a reasonable record, there does need to be finality. And whatever happens at the end of this case, whether it goes back or it gets appealed again, or whenever it eventually ends, throughout that process and after it ends, the school and the CT will continue to have to discuss again next year what is appropriate. And so this judge made a call on the record before it and it was a reasonable call that should be affirmed. Does the school only make that determination once a year at the beginning of the school year? Is that the way it works? So the IDA that by statute requires an IEP team meeting, which is the school and the parents, the clinicians and whoever else should be involved, meet at least once a year, can meet more often than that to review the individual education program, right? What special ed is going to be provided. It's a 12 month requirement. So sometimes it's in December and sometimes it's in May, but that's a minimum that every year, no matter what you have to have that meeting. And that's continuing despite the litigation. They continue to do it. The school has just decided to stand by its recommendation and the parents want the child to stay at Silas as of now. That may change, right? I mean, okay. At the end of third grade, there will be a meeting. At the end of fourth grade, there will be a meeting. And I just want to make sure it's not static because of the ongoing litigation. I know there's the stay put order. I understand that. But that doesn't mean that the two sides are not trying to figure out what's in the best interest of the child in the interim period.  The parties do continue to have to have that meeting, the AIP meeting and have those discussions. At the same time, until this case and all appeals are completely done by statute, the placement does not change except by agreement. Thank you, Mr. Weisshoff. Ms. Adderley, we'll move back to you now for rebuttal. Thank you, your honor. I only reserved a minute. So I understand that I don't have much time. So I'll try to be brief. I think counsel raised this issue. And I think this is important that the judge here considered only the new evidence that was presented at trial. And that is really the crux of the issue. Because in doing so, he ignored wholesale the entire administrative record. And the court's tunnel vision with respect to the assignment of a one-to-one aid, which by the way, the statute does not require that a school district exhaust every potential intervention in order before it can recommend a change of placement. It's problematic. He also failed to engage with the considerable evidence regarding this student's behaviors, of which there are many. And there's data from the time that he started kindergarten in the fall of 2022 until now. And with respect to the one-to-one aid, this student has never been without the support of an adult. In fact, he's in a classroom where the student to teacher ratio is seven to three. So this idea that we, perhaps we didn't give him in the IEP document itself, a specific one-to-one, but in practice, practically he was receiving that kind of embedded therapeutic support from adults on a daily basis. So at the end of the day, I think you come back to the question that was posed by this court in ZS. And I think that you look at this court's, the circuit's president in the District 211 versus Ross case, and you have to look at the behaviors when we were talking about a change of placement with respect to the least restrictive environment. And the question that was posed there was, you know, what could a full-time teacher's aid in the ZS case? What could even a full-time teacher, I'm sorry, I'm out of time. May I continue just to finish my- No, please, just five more. Thank you. In ZS, the court had very aptly stated, and I think this applies with equal force here. What could even a full-time teacher's aid had done to restrain this wild child when he started kicking and biting people, tearing his clothes, breaking furniture, and otherwise acting out as he had been doing for years with no improvement. And those types of behaviors are the same types of behaviors we're seeing from this particular student. Thank you, Ms. Satterley. Thank you, Mr. Wysong. The case will be taken under advisement.